UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PANCAKE KING, LLC, 638, INC., and 668, INC.,

Plaintiffs,

v.

U.S. SPECIALTY INSURANCE COMPANY,

Defendant.

CASE NO. C23-1142 MJP

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on the Parties' Cross-Motions for Partial Summary Judgment. (Dkt. Nos. 18, 21.) Having reviewed the Cross-Motions, Replies (Dkt. Nos. 24, 26), Defendants' Requests for Judicial Notice (Dkt. Nos. 20, 25), and all supporting materials, the Court GRANTS Defendant's Motion and DENIES Plaintiffs' Motion.

**BACKGROUND**

Plaintiffs Pancake King LLC, 638, Inc., and 668, Inc. (collectively "IHOP") are three International House of Pancakes franchisees who obtained an employment practices insurance

policy from U.S. Specialty (the "Policy"). (Compl. ¶¶ 1.1, 2.1-2.3 (Dkt. No. 1).) The Policy provides coverage for certain employment practices and "is written on a claims-made and reported basis, which requires that any claim be made and reported to USSIC during the policy period." (Compl. 4.1.)

IHOP presented U.S. Specialty with a claim for coverage under the Policy after two employees filed class actions alleging violations of Washington laws related to minimum wage and meal and rest breaks. (Compl. ¶¶ 1.3, 4.1.) U.S. Specialty defended IHOP under a reservation of rights, subject to a $100,000 cap on defense costs, and denied any duty to indemnify IHOP for the claims. (Compl. ¶ 4.2.) U.S. Specialty justified its refusal to indemnify based on the following language:

> This Policy does not apply to any Loss:
>
> […]
>
> (B) for, based upon, or arising from an actual or alleged violation of the Fair Labor Standards Act or any other federal, state, or local wage and hour law, regulation, or order, including, but not limited to, those relating to overtime compensation, on-call time, minimum wage, employment misclassification, gratuities, vacation pay, meal and rest breaks, uniform and equipment reimbursement, payroll deductions, waiting time penalties, books, records, and documentation obligations, mileage or other business expense reimbursement. This Exclusion does not apply to any separate Loss or Defense Costs arising from an Employment Practices Wrongful Act.

(Compl. ¶ 4.2.) The Court refers to this as the "Sublimit."

The primary dispute in the Parties' Cross-Motions is whether the class actions should be considered to be "based upon, or arising from an actual or alleged violation of . . . state . . . wage and hour law[s]." (Compl. ¶ 4.2.) If the claims presented in the class actions were for violations of wage and hour laws, then U.S. Specialty properly denied coverage and is entitled to relief on its counterclaim. If not, then IHOP is entitled to relief on some of its claims. To understand these issues, the Court examines the claims in the class actions.

The first class action, Alyexi R. Archer v. Terpstra & Company LLC, et al., Case No. 22-2-12277-3 SEA, alleged that IHOP failed to encourage, record, promote, and compensate employees for rest and meal breaks. (Def. RJN at Ex. A (Dkt. No. 20-1).) The complaint contains the following causes of action: (1) failure to ensure rest periods in violation of the Washington Industrial Welfare Act RCW 49.12 ("IWA") and related Washington Department of Labor & Industries ("DOLI") Regulation WAC 296-126-092, and failure to compensate for violations of the Washington Minimum Wage Act ("MWA") and Washington Wage Payments Act ("WPA"); (2) failure to provide meal periods in violation of the IWA and DOLI Regulation WAC 296-126-092, and failure to compensate for violations of the MWA and WPA; (3) failure to pay overtime in violation of the MWA; and (4) willful withholding of wages in violation of the Washington Wage Rebate Act ("WRA"). (Id. at 6-8 (Dkt. No. 20-1 at 7-9).) And the prayer for relief asked for "unpaid wages" and "double the wages due to Plaintiff . . . pursuant to RCW 49.52.070" (the Wage Rebate Act). (Id. at 9 (Dkt. No. 20-1 at 10).)

Ultimately the parties settled the Archer class action for $375,000. The settlement agreement included a release of "any and all claims . . . that that were brought or that could have been brought based on any facts alleged in the Case with respect to wage and hour violations by all Settlement Class Members." (Def. RJN ¶ 2, Ex. B at Section VI.1.q (Dkt. No. 20-2 at 10).) The release expressly included claims for "alleged missed, interrupted, shortened, untimely, unpaid, and/or non-compliant rest breaks and/or meal breaks[.]" (Id.) The parties also settled Archer's individual wrongful termination claims though a settlement agreement whose release expressly carved out the claims based on "alleged wage and hour violations made on a class basis in the case of Archer v. Terpstra & Company, LLC, et al., No. 22-2-12277-3 SEA, King County Superior Court." (Declaration of Kathryn Sherman ¶ 8, Ex. C at ¶ 4 (Dkt. No. 19).)

In the second class action, Jarrod Kiger v. Pancake King, LLC, Case No. 23-2-04966-7 SEA, the plaintiff alleged that Pancake King LLC failed to provide employees with rest and meal breaks, compensate employees for missed rest and meal breaks, and ensure policies and practices to allow employees to take these breaks. (Def. RJN ¶ 3, Ex. D at ¶ 13 (Dkt. No. 20-3).) The complaint contained two causes of action: (1) failure to compensate for missed meal and rest periods in violation of the IWA and DOLI Regulation WAC 296-126-092; and (2) willful and intentional withholding of wages in violation of the WRA. (Def. RJN Ex. D.) The parties settled the claims in Kiger. Kiger agreed not to opt out of or challenge the settlement reached in the Archer case in exchange for $4,000 and the ability to obtain a pro rata share of the Archer settlement. (Sherman Dec. ¶ 11, Ex. F at ¶¶ 1, 4.a.)

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the

existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**B. The Underlying Claims Fall Squarely Under the Sublimit**

There are three reasons why U.S. Specialty is entitled to partial summary judgment.

First, the plain language of the Policy forecloses indemnification for the meal and rest break claims in both the Archer and Kiger lawsuits. Under Washington law, courts enforce "the language of the policy [that] is plain[.]" Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 710-11 (2016). Here, the Policy expressly and plainly includes "meal and rest breaks" as part of a non-exclusive list of "wage and hour" laws that are subject to the Sublimit. (Compl. ¶ 4.2.) Read in this context, the clear language of the Policy includes meal and rest laws as a form of wage and hour laws subject to the Sublimit. The Sublimit therefore applies to the claims presented in both Archer and Kiger, and renders U.S. Specialty's denial of indemnification proper. The Court finds no support for IHOP's argument that there is ambiguity in the Sublimit because the Policy does not separately define the term "wage and hour law." (Pl. Mot. at 9.) Ambiguity exists only if the policy language "on its face, . . . is fairly susceptible to two different interpretations, both of which are reasonable." Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171 (2005) (citation omitted). Here, IHOP provides no explanation of what the reasonable different interpretations might be or why the term is ambiguous. The Court finds no ambiguity, particularly since the Policy effectively defines the term "wage and hour" in the Sublimit by setting forth a non-exclusive list of laws that includes meal and rest break laws. This is sufficient clarity to avoid a finding of ambiguity.

Second, even if the Court were to find ambiguity in the Policy, IHOP fails to explain why the Sublimit does not apply to the meal and rest break claims in the two underlying actions. The

Parties essentially agree that "wage and hour" means payment for work on an hourly basis. (See Def. Mot. at 15-16; Pls. Opp. at 9.) As IHOP frames it, a wage and hour law "govern[s] the remuneration owed to employees for the amount of time worked." (Pl. Mot. at 9.) IHOP then argues that the Archer and Kiger cases presented distinct claims under the Industrial Welfare Act ("IWA") that cannot be construed as "wage and hour" claims because the IWA's "purpose is to protect employees from conditions that 'have a pernicious effect on their health.'" (Pl. Mot. at 9-10 (quoting RCW 49.12.010).) This argument lacks merit. The very same "declaration" section of the IWA on which IHOP relies expressly notes that "inadequate wages and unsanitary conditions of labor" are the "conditions of labor which have a pernicious effect on [workers'] health." RCW 49.12.010. The law clearly places wages on par with sanitary working conditions. This is evidenced by the IWA's prohibition on inadequate wages: "[I]t shall be unlawful to employ workers in any industry within the state of Washington at wages which are not adequate for their maintenance." RCW 49.12.020; see also RCW 49.12.041, -.091, -.121 (targeting inadequate wages). IHOP fails to identify any reason why the IWA does not apply to wages. Similarly, the DOLI regulations at issue in the underlying lawsuits also concern wages as well as meal and rest breaks. The regulations contain many provisions expressly targeting wages and make clear that workers are to be paid for meal and rest breaks. See WAC 296-126-010, -015, -020, -021, -025, -028, -030, -090,-204. A fair reading of both the IWA and the DOLI regulations confirm that they are "wage and hour" laws subject to the Sublimit. This is further highlighted by the fact the plaintiffs in both the Archer and Kiger invoked the IWA and the DOLI regulations to obtain unpaid wages for missed meal and rest breaks and did not seek any injunctive or other relief.

Third, IHOP fails to identify any legal authority that supports its arguments that the IWA and DOLI regulations only concern worker safety. First, IHOP cites to a Washington Court of Appeals decision that held the IWA provides for an implied cause of action that is distinct from other wage and hour laws. (See Pl. Mot. at 10 (citing Wingert v. Yellow Freight Systems, Inc., 104 Wn. App. 583, 592, 13 P.3d 677 (2001), aff'd by 146 Wn.2d 841, 50 P.3d 256 (2002)).) But that decision does not ultimately support IHOP's position. The mere fact there is a separate cause of action under the IWA from other wage and hour laws does not mean the IWA is not itself a form of wage and hour law. IHOP identifies no part of the holding in the Court of Appeals' decision in Wingert that would support such a conclusion. Indeed, the Supreme Court's decision in Wingert undermines IHOP's position, given that it expressly held that the IWA provides an "implied cause of action for unpaid wages" arising out of missed rest and meal breaks. Wingert, 146 Wn.2d at 850 (emphasis added). Second, IHOP argues that the "only Washington case to analyze IWA in an insurance context held that the wage and hour exclusion did not apply." (Pl. Mot. at 13 (citing Travelers Cas. & Sur. Co. of Am. v. Spectrum Glass Co., Inc., No. C11-1324-JCC, 2012 WL 3780356 (W.D. Wash. Aug. 31, 2012)).) But the decision in Spectrum made no determination as a matter of law that the IWA or DOLI regulations do not involve wages. Instead, the decision turned on different, narrower policy language that did not expressly identify meal and rest breaks as a form of wage and hour law, as the Policy does here. Spectrum, 2012 WL 3780356, at *7-8. And the court in Spectrum noted that the underlying claims sought prospective injunctive relief for meal and rest breaks, not merely lost wages, and, perhaps most importantly, Traveler's 30(b)(6) witness admitted that the DOLI regulations do not relate to the payment of wages. Id. at *7. Here, neither Archer nor Kiger included claims for injunctive relief, and U.S. Specialty has not admitted the claims in the cases did not relate to wages. To the

contrary, IHOP itself has expressly identified the settled claims in the Archer matter as being "wage and hour violations," which undermines its position in the present lawsuit. (Def. RJN ¶ 2, Ex. B at Section VI.1.q (Dkt. No. 20-2 at 10).) Neither Wingert nor Spectrum supports IHOP's position, and the Court remains unconvinced by IHOP's arguments.

The Court therefore GRANTS U.S. Specialty's Cross-Motion and DENIES IHOP's Cross-Motion. U.S. Specialty is entitled to judgment in its favor on its Counterclaim.

**CONCLUSION**

Having considered the Parties' arguments, the Policy's plain language, and the underlying claims, the Court finds that the Sublimit unambiguously applies to the claims presented in the Archer and Kiger actions. The Court finds that U.S. Specialty is entitled to judgment in its favor on its counterclaim and that it owed no duty to fund the settlements and indemnify IHOP in the Archer and Kiger actions.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 11, 2024.

Marsha J. Pechman
United States Senior District Judge